**Arthur D. COLEMAN, on behalf of himself and all others similarly situated**

v.

**NATIONAL MOVIE–DINE, INC. and Creative Cine-Tel, Inc.**

**Civ. A. No. 77–2948.**

United States District Court, E. D. Pennsylvania.

April 28, 1978.

Morton Krase, Philadelphia, Pa., for plaintiff.

Daniel E. Bacine, Philadelphia, Pa., Stephen Sayre Singer, New York City, for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is the application of defendants National Movie-Dine, Inc. ("Movie-Dine"), and Creative Cine-Tel, Inc. ("Cine-Tel"), pursuant to section 3 of the United States Arbitration Act ("the Act"), 9 U.S.C. § 3 (1970),[1] for an Order staying all proceedings in plaintiff's diversity contract action pending plaintiff's submission of his claim to arbitration. The jurisdiction of this Court is based upon diversity of citizenship, 28 U.S.C. § 1332, and the matter in controversy is alleged to exceed $10,000, exclusive of interest and costs. For the reasons stated below, defendants' application will be granted.

Movie-Dine, a wholly-owned subsidiary of Cine-Tel, is a New York corporation engaged in the business of licensing others to exhibit motion pictures in restaurants, lounges and dinner theaters within a certain geographic territory. On November 5, 1975, plaintiff Arthur D. Coleman ("Cole-

---

1. 9 U.S.C. § 3 (1970) provides:

    If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

man"), a Pennsylvania resident, and Movie-Dine executed a contract wherein Movie-Dine, upon consideration of $20,000, granted Coleman a five-year license to ·operate an exclusive distributorship within a specified area of Eastern Pennsylvania for the leasing of the Movie-Dine system to participating restaurants. Coleman alleges that, as a result of Movie-Dine's breach of contract, it became impossible for him to profitably exhibit the films and maintain his restaurant accounts. Consequently, Coleman brought this action on behalf of himself and all others similarly situated to recover damages against both Movie-Dine and Cine-Tel for the alleged breach of their agreement.

Movie-Dine has applied for an Order staying all proceedings in this case on the ground that the Distributor Licensing Agreement executed between Coleman and Movie-Dine contains a broad provision for arbitration.[2] Movie-Dine argues that the agreement provides for arbitration of all of the claims raised in Coleman's complaint and that this action should be stayed under section 3 of the Act. In response, Coleman argues that his action should not be stayed because his claim of fraud in the inducement and his class action allegations are issues not referable to arbitration.

■ Arbitration is a matter of contract, and a party cannot be forced to submit to arbitration any dispute which he has not agreed to so submit. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Under the Act, a provision for arbitration in any maritime transaction or a contract evidencing a transaction involving commerce[3] is valid, irrevocable and enforceable. 9 U.S.C. § 2 (1970). Section 3 of the Act reaches only those

contracts covered by sections 1 and 2, *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 202, 76 S.Ct. 273, 100 L.Ed. 199 (1956), and requires a federal court in which suit has been brought upon any issue referable to arbitration, under an agreement in writing for such arbitration, to stay the court action pending arbitration once the court is satisfied that the issue is arbitrable under the agreement and that there has been no waiver of the right to arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 400, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); 9 U.S.C. § 3 (1970) n. 1 *supra.*

■ The first issue we must decide is whether the written agreement between Coleman and Movie-Dine providing for arbitration is embodied in a contract of the type covered by the Act. The facts outlined above establish that the distributor licensing agreement involved in this case is clearly not a maritime transaction. Therefore, to invoke the stay provisions of section 3 of the Act, Movie-Dine must establish that the agreement is a contract evidencing a transaction involving commerce within the meaning of the Act. Because the record presented on this issue was sparse, this Court ordered Coleman, at oral argument, to file an affidavit in response to the affidavit of Ernest Bogen, President of Movie-Dine and Cine-Tel, to address the issue of whether the agreement evidenced a transaction involving section 1 commerce. In ¶ 7 of his affidavit, Bogen stated that the regular relations between Coleman and Movie-Dine involved Coleman ordering films for exhibition from Movie-Dine in New York, the shipment of films from New York to Coleman in Pennsylvania, their return to New York and the rendering of reports and payments from Coleman in Pennsylvania to Movie-Dine in New York. Coleman also

**2.** Section 17 of the Distributor Licensing Agreement provides:

Any controversy, dispute or question arising out of any aspect of the Agreement, including the making thereof, shall be resolved by arbitration in accordance with the then existing rules of the American Arbitration Association conducted in New York, New York, and any judgment or any award (which

may, subject to the terms hereof, include an award of damages or equitable relief) may be entered in any state or federal court having jurisdiction.

**3.** 9 U.S.C. § 1 (1970) defines "commerce" to include "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia."

shipped one of Movie-Dine's films to another distributor in Kansas. Further, Bogen stated that the training supplied by Movie-Dine to Coleman was provided by individuals who traveled to Pennsylvania from out-of-state for that purpose. Although Coleman stated in his affidavit that the Movie-Dine films were exhibited exclusively in restaurants located in Eastern Pennsylvania, he failed to address, and therefore refute, the facts demonstrating interstate commerce as presented by Bogen's affidavit and evidenced by the agreement. We find, therefore, that Movie-Dine has met its burden in establishing that the distributor licensing agreement executed between Coleman and Movie-Dine is a contract evidencing a transaction involving commerce and is one covered by sections 1 and 2 of the Act.

■ We must next determine whether the issues involved in this proceeding are referable to arbitration under the terms of the contract executed between Coleman and Movie-Dine.[4] Coleman argues that the issues in this suit are not arbitrable because of his allegation of fraud in the inducement to enter the agreement, and because the suit has been brought as a class action pursuant to Fed.R.Civ.P. 23. First, Coleman's claim of fraud in the inducement is a general attack on the validity of the contract and not specifically directed to the agreement's arbitration provision itself. A claim of fraud in the inducement of the contract is insufficient to prevent the invocation of the arbitration provision of the contract. *Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra,* 388 U.S. at 402–404, 87 S.Ct. 1801. It is well settled that a general attack on a contract on the ground of fraud in the inducement is a severable claim which is referable to arbitration and is a claim which should not be considered by a federal court. *Id.* at 404, 87 S.Ct. 1801. Only a claim of fraud in the inducement which is addressed to the arbitration provision *per se* should be adjudicated by the court rather than the arbitrator, because a federal court, in passing upon a section 3

application for a stay, may consider only issues relating to the making and performance of the agreement to arbitrate. *Id.* at 404, 87 S.Ct. 1801; *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission,* 387 F.2d 768, 771 (3d Cir. 1967). We find, therefore, that Coleman's claim of fraud in the inducement is a severable claim and an issue which is referable to arbitration.

■ Second, Coleman argues that, even under the broadest interpretation of the agreement's arbitration clause,[5] the parties never agreed to permit issues brought as a class action to be referable to arbitration. In the absence of any express provision excluding a particular grievance from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail" where the arbitration clause is broad in its coverage. *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 584–585, 80 S.Ct. at 1354. Arbitration should not be foreclosed simply by adding persons to a civil action who are not parties to the arbitration agreement because such an inclusion would thwart the federal policy in favor of arbitration. *Cf. Hilti, Inc. v. Oldach,* 392 F.2d 368, 369 n. 2 (1st Cir. 1968); *Lawson Fabrics, Inc. v. Akzona, Inc.,* 355 F.Supp. 1146, 1151 (S.D.N.Y.), *aff'd mem.,* 486 F.2d 1394 (2d Cir. 1973). We find, therefore, that Coleman cannot prevent the submission of his claims to arbitration by bringing this suit as a class action, because the broad arbitration clause in the agreement does not have an express provision excluding class actions from arbitration and because there is no forceful evidence of a purpose to exclude such a claim from arbitration.

■ The thrust of Coleman's suit is the recovery of damages from Movie-Dine and Cine-Tel for their alleged breach of contract. Although claims for breach of contract are the archetypal kinds of disputes referable to arbitration, *Macchiavelli v.*

4. *See* n. 2 *supra.*

5. *See* n. 2 *supra.*

Shearson, Hammill & Co., Inc., 384 F.Supp. 21, 30 (E.D.Cal.1974), we must examine the agreement to arbitrate in order to determine which issues are referable to arbitration. In this case, the parties have specifically agreed in their contract to the inclusion of an arbitration provision which states that "any controversy, dispute or question arising out of any aspect of the Agreement, including the making thereof, shall be resolved by arbitration." [6] Coleman's claim for damages for Movie-Dine's alleged breach of contract is clearly a controversy or dispute arising out of the distributor licensing agreement. We find, therefore, that Coleman's claim for damages for breach of contract is an issue which the parties agreed is referable to arbitration under the terms of the agreement.

    The only remaining issue is whether there has been a waiver by Movie-Dine of the right to arbitration. Waiver of the right to arbitration is not to be lightly inferred, and unless one's conduct has gained him an undue advantage or resulted in prejudice to another, he should not be held to have relinquished the right to arbitration. *Gavlik Construction Co. v. H. F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir. 1975); *Vespe Contracting Co. v. Anvan Corp.*, 399 F.Supp. 516, 522 (E.D.Pa.1975). In this case, Movie-Dine's prompt application to stay the proceedings pending arbitration, filed within four weeks of service, precludes any finding of Movie-Dine's waiver of its right to arbitration.

In conclusion, we shall stay the suit brought in this Court, pursuant to 9 U.S.C. § 3 (1970),[7] until such arbitration has been completed in accordance with the terms of the agreement.

An appropriate Order will be entered.

---

6.   *See* n. 2 *supra.*

7.   The Court notes that we need not decide the issue of our inherent power to compel arbitration, *see Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936),

*and Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission, supra,* 387 F.2d at 773, because a stay of proceedings in this case is clearly authorized, and required, under the Act.