Mary Lois BROWN

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al.

Civ. A. No. 87–1130.

United States District Court,
E.D. Pennsylvania.

June 29, 1987.

T. Sergeant Pepper, Philadelphia, Pa., for plaintiff.

C. Clark Hodgson and James K. Grasty, Philadelphia, Pa., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

In this action, Mary Lois Brown filed a five count complaint[1] against defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., ("Merrill Lynch") and Shearson/American Express Inc. ("Shearson"). The plaintiff seeks monetary damages based on contractual relationships with defendants and alleged tortious behavior in which defendants are alleged to have willfully and maliciously impugned plaintiff's business reputation. Defendants Merrill Lynch and Shearson now move to compel arbitration under the Federal Arbitration Act, based upon the Uniform Application for Securities Industry Registration Form U–4 ("U–4 Form"). For the reasons enumerated below, the defendant's motion to compel arbitration will be granted as it pertains to Merrill Lynch but denied as it pertains to Shearson, with leave to renew the motion if warranted by facts not now in the record.

### I.

The case arises from employment agreements between Brown and Shearson in 1982 and between Brown and Merrill Lynch in 1984. At the commencement of her employment with the defendants, Brown completed and signed two U–4 Forms. Completion of a U–4 Form is a prerequisite for registration with the security industry's Self Regulating Organizations ("SRO's"), which are also known as stock exchanges.[2]

---

1. Brown's complaint lists the following counts. First: Merrill Lynch interfered with plaintiff's existing and prospective contractual relationships with her clients. Second: Shearson interferred with plaintiff's business relationships with both her existing and prospective clients and with defendant, Merrill Lynch. Third: Merrill Lynch and Shearson conspired to interfere with plaintiff's existing and prospective business relationships. Fourth: Merrill Lynch wrongfully terminated plaintiff's employment contract. Fifth: Merrill Lynch and Shearson willfully and maliciously impugned her business reputation as a broker and financial consultant.

Jurisdiction is based on diversity of citizenship.

2. The U–4 Form lists twelve self-regulating organizations ("SROS") including exchanges such as the New York Stock Exchange ("NYSE"), American Stock Exchange ("ASE") and National Association of Securities Dealers ("NASD").

Question 8 of the U–4 Form contains an arbitration clause, which requires that "any dispute, claim or controversy" arising from the employment relationship and covered by an SRO with which the applicant registers be submitted to arbitration.[3] The arbitration clause also states that the scope of arbitration is determined from the constitution, by-laws or rules of those SROS selected on the U–4 Form.

In the Motion to Compel Arbitration, defendants allege that by signing the 1982 and 1984 U–4 Forms, and completing question 8 on each form, Brown agreed to submit the disputes at issue in this case to arbitration under the by-laws of the NYSE, and specifically Rule 347 which defines arbitration within this SRO. Plaintiff Brown opposes the motion on the three grounds. First, Brown argues that by completing and signing the 1982 U–4 Form at the commencement of her employment with Shearson, she did not agree to the arbitration of disputes arising out of this employment relationship. Second and more generally, plaintiff asserts that the disputes between herself and both Merrill Lynch and Shearson do not fall within the scope of the arbitration clause contained in the U–4 form. Third, plaintiff argues that submission of the disputes presented in the complaint to arbitration violates public policy.

## II.

The Federal Arbitration Act, 9 U.S.C. §§ 1–14, provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act also expressly mandates that a district court shall stay the trial of any issue which the court believes is subject to a valid written arbitration agreement upon application of any party to that agreement. 9 U.S.C. § 3. Section 4 mandates that a district court shall direct the parties to proceed to arbitration in those instances where it is clear that an agreement for arbitration has been made and that there has been a failure to comply with the agreement. 9 U.S.C. § 4.

Embodied in this Act is a strong policy favoring arbitration as an alternative dispute resolution process. *Perry v. Thomas,* — U.S. ——, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *Shearson/American Express, Inc. v. McMahon,* — U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983). The Arbitration Act and the policies it embodies have been regularly applied to disputes between stock brokers and stock brokerage firms. *Perry, supra; Shearson/American Express, supra; Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447 (9th Cir. 1986); *Morgan v. Smith Barney Harris Upham & Co., Inc.,* 729 F.2d 1163 (8th Cir.1984).

"The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444, 454 (1985). This determination is made by applying federal law under the Arbitration Act, *id.* at 455, citing *Moses H. Cone Memorial Hospital, supra,* 460 U.S. at 24, 103 S.Ct. at 941, according to which,

> [Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself [or other questions.]

*Moses H. Cone Memorial Hospital, supra,* 460 U.S. at 24–25, 103 S.Ct. at 941–42.

### A. *Shearson*

Brown argues specifically that the U–4 Form signed on February 25, 1982 at the

---

**3.** The U–4 Form states: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the organization with which I register, as indicated in question 8." 1982 and 1984 U–4 Form, Exhibits B and C plaintiff's complaint.

commencement of employment with Shearson does not exhibit an express agreement to arbitrate disputes to satisfy the requirements of 9 U.S.C. § 2. Brown points out that in completing and signing the 1982 U–4 Form, question 8 was left blank, to indicate that Brown did not wish to fall within the jurisdiction of the constitutions or by-laws of any SRO listed on the U–4 Form. In fact, Brown argues that there is no express agreement between the parties as required by the Court of Appeals for the Third Circuit in *Par-Knit Mills v. Stockbridge Fabrics*, 636 F.2d 51 (3d Cir.1980).

■ It is a cardinal principal that arbitration is a matter of contract; arbitration cannot be compelled absent an express agreement to arbitrate. *Shearson/American Express, supra,* —— U.S. at ——, 107 S.Ct. at 2336; *Mitsubishi Motors, supra,* 87 L.Ed.2d at 454–55; *Delgrosso v. Spang and Company,* 769 F.2d 928 (3d Cir.1985), *cert. denied* —— U.S. ——, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986); *Coleman v. National Movie-Dine, Inc.,* 449 F.Supp. 945 (E.D. Pa.1978).

■ The absence of an express indication by Brown that she agreed to arbitrate matters with Shearson prohibits this court from compelling arbitration. Question 8, from the 1982 U–4 Form, which was completed and signed by Brown, was not answered in its entirety. Brown did not indicate that she sought registration with any SRO. Consequently, Brown did not agree via the U–4 Form to arbitrate future disputes connected with her employment with Shearson.[4]

### B. *Merrill Lynch*

Having concluded that Brown should not be compelled to arbitrate disputes with Shearson, I now turn to disputes arising out of Brown's employment with Merrill Lynch and whether an express agreement exists between Brown and Merrill Lynch to arbitrate disputes. In addition, I will consider Brown's more general argument that the disputes in question do not fall within the scope of the arbitration clause.

### 1. *Agreement to Arbitration*

The 1984 U–4 Form signed at the commencement of employment with Merrill Lynch presents various contractual questions. Having registered on that form with the NYSE, ASE and NASD, Brown asserts that it is unclear whether the determination of arbitrability should be based on NYSE, ASE or NASD standards. Brown goes further and concludes this lack of clarity prevents a determination that Brown expressly agreed to arbitration under any particular standard. I disagree with Brown's conclusion.

As the court in *International Telephone and Telegraph v. Local 400* observed:

> [T]he judicial function is narrowly circumscribed in cases such as this where the parties have agreed to submit to arbitration disputes arising under the collective bargaining agreement. That function is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is one governed by the agreement. A court cannot pass on the merits of the claim. That is the arbitrator's function.

286 F.2d 329, 330–331 (3d Cir.1961) (in labor arbitration context).

■ The 1984 U–4 Form signed by Brown at the commencement of her employment with Merrill Lynch indicated registration with 3 national SRO's, including the NYSE, the ASE and the NASD, as well as several state SRO's. By signing the 1884 U–4 Form, Brown agreed to submit disputes arising from the employment relationship to arbitration. Whether, in the course of arbitration the by-laws of the NYSE, ASE or NASD are to be applied is a question for the arbitrator to determine. It is sufficient for the court's purpose to recognize that plaintiff's claims do fall

---

4. However, Exhibit B, which contains the 1984 U–4 signed by Brown at the commencement of employment with Merrill Lynch, shows that question 8 was answered, indicating that the 1984 Form was a transfer of registration. It is conceivable that Brown was registered with the NYSE, ASE or NASD during employment with Shearson and is subject to the arbitration provisions. However, I am unable to draw this conclusion based on the record before me.

within the scope of at least one of the SRO's arbitration provisions, here NYSE Rule 347. Rule 347 provides:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member organization shall be settled by arbitration, at the instance of any such party.

Broad language such as this has been held in the context of the Arbitration Act to encompass such claims as federal statutory claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b), and SEC Rule 10b–5 promulgated thereunder, *Shearson/American Express, supra;* federal antitrust claims, *Mitsubishi Motors, supra;* state law stautory claims, *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); and state law claims sounding in tort, including slander, *Morgan, supra;* and defamation, invasion of privacy and intentional infliction of emotional distress, *Aspero v. Shearson/American Express Inc.,* 768 F.2d 106 (6th Cir.1985). *But see Barrowclough v. Kidder Peabody & Co., Inc.,* 752 F.2d 923 (3d Cir.1985) (ERISA claims exempted by Congress from Arbitration under Rule 347 and the Arbitration Act). Merrill Lynch should not be deprived of its contractual right to arbitrate the disputes at issues here which arose from the employment relationship with Brown.

### 2. *Scope of the Arbitration Clause*

Brown argues, based on *Ayres v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 538 F.2d 532 (3d Cir.1976), that not all claims are arbitrable under NYSE Rule 347. In *Ayers,* a former employee of Merrill Lynch sued for securities fraud under the Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b), and SEC Rule 10b–5. *Ayers* held in part that Rule 347 did not apply to that plaintiff's claim because the claim arose from the purchase of stock and not from plaintiff's employment relationship with the defendant.[5] Thus, *Ayers* is readily distinguishable from this case, in which the dispute clearly emanates from plaintiff's "employment or termination of employment" with Merrill Lynch. Furthermore, in light of the expansive reading of the scope of the Arbitration Act demonstrated in many of the recent Supreme Court cases, including those cited in the previous section of this Memorandum, it is clear that the claims presented here are arbitrable under the Act.

### 3. *Public Policy*

Brown argues that arbitration of these disputes is against public policy because: (a) the licensing application was a contract of adhesion; and (b) because of the recent trend of stock market abuses.

### a. *Contract of Adhesion*

Brown argues that the arbitration clause should not be enforced because, if it forms a part of a contract, that contract is one of adhesion and is therefore invalid as against public policy. Brown relies on the case of *Melso v. Texaco, Inc.,* 532 F.Supp. 1280 (E.D.Pa.), *aff'd,* 696 F.2d 983 (3rd Cir.1982). In *Melso,* independent refiners of defendant's gasoline and other products sued on various grounds to enjoin the defendant from assessing a three percent credit card invoice processing fee. One basis advocated for the relief requested was that the credit agreement was a contract of adhesion, manifesting a clear disparity of bargaining power. *Id.* at 1297. The agreement was a standard form, and its terms were not subject to negotiation. *Id.* Despite finding that the contract was one of adhesion, Judge Broderick denied the requested relief, writing:

> [A] contract is not invalid merely because it is a contract of adhesion. "[F]inding a contract to be one of adhesion means

---

**5.** *Ayers* offered an alternative holding, that actions for securities fraud are not arbitrable under general arbitration agreements. That holding is no longer valid in light of *Shearson/American Express, supra,* —— U.S. at ——, 107 S.Ct. at 2335 (holding that contracts to arbitrate disputes can include allegations of securities fraud).

nothing more than that the court must review its terms for fairness ..." *Corbin on Contracts*, § 559C at 327 (1980 Supp.) ... To be fair, a contract of adhesion must not give one party all the benefits while giving the other party all of the burdens of the contract. *Corbin, supra*, § 559F at 331. The terms of a contract of adhesion must be reasonably adapted to advance a legitimate purpose of the party that drafted the contract. *Id.* at 1297–98. As the Third Circuit Court of Appeals pointed out, an "arbitration agreement is not invalid ... merely because it is required of all registered brokers by the New York Stock Exchange Rule 347." *Barrowclough, supra*, 752 F.2d at 937.

It is true that "a well-founded claim that an arbitration agreement resulted from ... excessive economic power ... 'would provide grounds for the revocation of any contract,'" *Shearson/American Express, supra*, — U.S. at —, 107 S.Ct. at 2337, quoting 9 U.S.C. § 2, and hence for the revocation of an agreement to arbitrate. *See also Mitsubishi Motors, supra*, 87 L.Ed.2d at 455. However, in light of the strong federal policy of enforcing arbitration agreements, the burden on the party seeking to invalidate such an agreement is a heavy one. *Id., citing The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972) ("[W]e conclude that the [contracted for] forum clause should control absent a strong showing that it should be set aside.")

■ In reviewing the clause for fairness, I am guided by the *Barrowclough* and *Melso* decisions in finding that the agreement is not invalid. The record before me does not indicate that Brown, a sophisticated individual dealing in a sophisticated industry, was coerced in any way to sign the U–4 Form. Nor was there a disproportionate degree of burden placed upon Brown pursuant to the arbitration clause. Plaintiff simply has not met the heavy burden which she bears in seeking to have the arbitration provision invalidated. Therefore, I conclude that the arbitration clause is valid and binding on the parties.

b. *Stock Market Abuses*

Finally, plaintiff contends that the recent spate of stock market abuses compels the courts to abandon the arbitrator's forum in favor of trying cases in the courts. "It is time to once again examine the advantages and disadvantages of arbitration." Plaintiff's Memorandum of Law at 15. Plaintiff seeks to strengthen this argument by giving examples of instances where brokerage firms themselves seek to avoid arbitration where they perceive it does not work to their advantage. It is, however, clearly not the province of the courts to question the strong federal policy in favor of arbitration, which policy has been duly enacted by the legislature. Although the plaintiff fears a biased forum through arbitration, the examples she cites indicate the contrary—that arbitration does not always favor the brokerage firms. Furthermore, arbitrators are bound to apply the law and not "to dispense [their] own brand of ... justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). And, as the Court stated recently in *Shearson/American Express, supra*:

> The streamlined procedures of arbitration do not entail any consequential restriction on substantive rights.... [T]here is no reason to assume at the outset that arbitrators will not follow the law; and although judicial scrutiny of arbitration awards is necessarily limited, such review is sufficient to ensure that arbitrators comply with requirements of the statute.

— U.S. at —, 107 S.Ct. at 2340.

Therefore, for the above reasons, the motion to compel arbitration is granted as it refers to Merrill Lynch but denied as it refers to Shearson, with leave to renew the motion if supported by evidence not now before the court.