**PEOPLES SECURITY LIFE INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**MONUMENTAL LIFE INSURANCE COMPANY; B. Larry Jenkins; Ronald J. Brittingham; Thomas R. Jenkins,**
Defendants–Appellants. (Two Cases)

Nos. 88–3512, 88–3823.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1988.

Decided Feb. 10, 1989.

Donald E. Sharpe (Donna Hill Staton, Sheila M. Vidmar, Elizabeth C. Kelley, Piper & Marbury, Baltimore, Md., on brief), for defendants-appellants.

Alan Mitchell Wiseman (Gaspare J. Bono, Lisa J. Saks, Charles H. Samel, Howrey & Simon, Washington, D.C., Lillard H. Mount, James H. Hughes, Mount, White, Hutson & Carden, P.A., Durham, N.C., on brief), for plaintiff-appellee.

Before RUSSELL, WIDENER and CHAPMAN, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Plaintiff Peoples Security Life Insurance Company filed this action against defendants Monumental Life Insurance Company, B. Larry Jenkins, Thomas R. Jenkins, and Ronald J. Brittingham seeking injunctive relief and damages for certain of defendants' business practices as well as recision of an agreement entered into by the two insurance companies. The defendants, in turn, (1) moved to compel arbitration under the parties' arbitration agreement and (2) moved for a stay of proceedings pending arbitration. These motions were denied by the district court. For the reasons set forth below, we reverse the district court's decision and grant defendants' motion to compel arbitration and defendants' motion for a stay of proceedings pending arbitration.

I.

Monumental Life Insurance Company ("Monumental") is an insurance company organized under Maryland law with its principal place of business in Baltimore. Peoples Security Life Insurance Company ("Peoples Security") is an insurance company organized under North Carolina law with its principal place of business in that state. It represents a merger of Peoples Life Insurance Company ("Peoples Life") into Home Security Life Insurance Company ("Home Security"), with the merged company taking the corporate name, Peoples Security. Peoples Life and Home Security had been wholly-owned subsidiaries of Capital Holding and, as a result of the merger, Peoples Security was a subsidiary of Capital Holding.

Defendant Larry B. Jenkins ("L. Jenkins") resigned from his position as president of Peoples Life in August 1982 and became the president of Monumental. Defendant Ronald J. Brittingham ("Brittingham") resigned from his position as regional vice president of Peoples Life in September 1982 and became an officer of Monumental. Peoples Life became concerned with the loss of top employees to Monumental, and on January 17, 1984, at the request of Capital Holding, Peoples Life and Monumental entered into an agreement imposing a reciprocal hiring moratorium on the two companies. Specifically, Peoples Life and Monumental each agreed not to employ the other's "active agents, sales managers or home office employees" commencing February 1, 1984 through July 1, 1984.

Defendant Thomas R. Jenkins ("T. Jenkins") resigned from his position as field vice president of Home Security in August 1984 and was hired by Monumental. Shortly thereafter, Capital Holding requested the execution of another moratorium agreement between Peoples Life and Monumental. Following negotiations, the parties entered into a settlement agreement which is the centerpiece of the litigation (the "Settlement Agreement") and which (1) permitted the insurance companies to complete those employment discussions already in progress as of September 1, 1984, and (2) instituted a hiring freeze from September 13, 1984 through September 30, 1985. The parties further agreed not to appropriate or use the other's proprietary information and agreed to refrain from making material misrepresentations of fact to employees of the other company. Finally, the Settlement Agreement provided for arbitration of "[a]ny question, charge, complaint, or grievance believed to constitute a breach or violation" of the Agreement.[1] In July 1985, Peoples Life

---

1. The operative language of the arbitration provision was:

   Full compliance with the spirit and the terms of this agreement is intended and expected by both sides. Any question, charge, complaint or grievance believed to constitute a breach or violation shall be immediately communicated between counsel and the party alleged to be in

   breach of the agreement shall have five days to respond, correct or justify its action.
   If the aggrieved party is not then satisfied, the matter shall be submitted to the American Arbitration Association for final and mutually binding resolution by it including the award of damages or other relief. If the Arbitrator finds that there has been a hiring in violation of this Agreement, he shall award damages

agreed on an extension of the 1984 agreement between the parties by agreeing that the hiring freeze would continue through September 30, 1985 and the Settlement Agreement itself would remain in effect until September 30, 1987.

On August 1, 1986, Peoples Security filed this lawsuit against Monumental and L. Jenkins, Brittingham, and T. Jenkins, alleging that Monumental had entered into the Settlement Agreement in bad faith, and requesting that the Settlement Agreement be rescinded. The lawsuit also alleged breaches of fiduciary duty by L. Jenkins, Brittingham, and T. Jenkins, the unlawful appropriation of trade secrets and confidential information, tortious interference with contract, tortious interference with business relationships, unfair and deceptive trade practices, unjust enrichment, civil RICO violations, and defamation in violation of the Settlement Agreement.

The defendants, after denying the allegations in their answer, moved for arbitration and for a stay of proceedings pending arbitration. Plaintiff opposed the motion to arbitrate. After hearing oral argument on the motion, the district court denied arbitration and entered orders relating to future trial of the issues by the court.

The defendants filed a formal second motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and for a stay pending arbitration. Defendants requested at the same time that the court stay discovery pending its ruling on defendants' motion to compel arbitration.

Plaintiff responded to this motion by seeking court-imposed sanctions on defendants and their counsel for renewing their motion to arbitrate, contending that precise issue had been previously decided against them. The district court issued a Memorandum and Order which again denied arbitration. In so ruling, the court construed the arbitration clause in the Settlement Agreement as not encompassing the arbitration of the issue of fraud in the inducement of the Settlement Agreement. The court, however, declined to impose sanctions on defendants as requested by the plaintiff but ordered that discovery proceed according to its November 25, 1987 scheduling order.

The defendants then moved to compel arbitration pursuant to Rule 59, Fed.R.Civ. P. Defendants also requested that the district court certify the question regarding arbitration pursuant to 28 U.S.C. § 1292(b). Defendants argued that the court's interpretation of the arbitration clause was a controlling question of law as to which there was a substantial ground for difference of opinion and that an immediate appeal from the Order would materially advance the ultimate termination of the litigation. After hearing motions between the parties, the court finally ruled on the request of the defendants for a certification of the action for appeal under Section 1292(b). It entered the certification, and this court granted the appeal under Section 1292(b). While defendants' motion for Section 1292(b) certification was pending before the district court, defendants filed within time a notice of appeal of right under Section 1292(a)(1).[2] Plaintiff moved in this court to dismiss defendants' appeal for lack of jurisdiction. Defendants, in turn, filed their opposition to plaintiff's motion to dismiss. Consideration of this motion was deferred until oral argument.

The status of the appeal herein thus was that there was pending a timely appeal of right by the defendants under Section 1292(a) and an appeal under Section 1292(b) on the petition for an interlocutory appeal. In short, this appeal is before us both as one of right and by petition under both (a) and (b), respectively of Section 1292. Since we find that the defendants had an appeal of right under Section 1292(a), we find it unnecessary to consider the appeal under Section 1292(b).

## II.

■ It is the position of the plaintiff that an appeal from a denial of arbitration is not

commensurate with the loss he finds has been, or is expected to be, sustained up to but not exceeding $50,000 for each such hire.

2. The appeals were consolidated pursuant to Section 1292(a)(1) and Section 1292(b).

appealable under section 1292(a). Whatever may have been the rule to be followed under the so-called *Enelow–Ettelson* doctrine,[3] plaintiff argues that such rule had been overruled by the recent case of *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). In that case, the Supreme Court held that "orders granting or denying stays of 'legal' proceedings on 'equitable' grounds are not automatically appealable under section 1292(a)(1)," adding in explication:

> [t]his holding will not prevent interlocutory review of district court orders when such review is truly needed.... As for orders that were appealable under section 1292(a)(1) solely by virtue of the *Enelow–Ettelson* doctrine, they may, in appropriate circumstances, be reviewed under the collateral-order doctrine of section 1291, *see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed. 2d 765 (1983), and the permissive appeal provisions of section 1292(b), as well as by application for writ of mandamus. 108 S.Ct. at 1142–43 (footnote omitted).

It will be noted, however, that the Supreme Court in *Gulfstream* was careful to point out that its decision did not apply to cases such as *Moses H. Cone*. *Moses H. Cone* was entered in an appeal from this circuit. We expressly held in that case that there was an appeal of right from a denial of arbitration under an arbitration clause qualifying under the Federal Arbitration Act. *In re Mercury Construction Corp.*, 656 F.2d 933, 937 (4th Cir.1981). The Supreme Court addressed the appealability issue in its opinion and held that the order denying arbitration was "appealable [of right] within the exception to the finality rule under *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)." *See* 460 U.S. at 11–12, 103 S.Ct. at 934–35. It, therefore, follows that the denial of arbitration was appealable of right under Section 1292(a).

## III.

Having determined that we have jurisdiction to hear defendants' appeal, we turn to the matter of arbitration. Whether a contract's arbitration clause allows the arbitration of a certain dispute is for a court to determine. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). In making this determination, a court must focus on "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate...." *AT & T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964). Of course, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Nonetheless, it is well settled that there exists a "healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Indeed, the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. *Warrior & Gulf Navigation Co.*, 363 U.S. at 583, 80 S.Ct. at 1353. Thus, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53 (footnote omitted). This heavy presumption in favor of arbitrability is based on public policy considerations of the need for speedy and efficient decisions "not subject to delay and obstruction in the courts."

---

**3.** *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935) and *Ettelson v.*

*Metro. Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942).

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967).

■ The Federal Arbitration Act, 9 U.S. C. §§ 1–14 (1982) (the "Act") sets forth the general federal law relating to arbitration.[4] The Act, of course, "does not mandate arbitration of all claims, but merely the enforcement ... of privately negotiated arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). The Act is a statement of Congressional intent in upholding private parties' arrangements for dispute resolution. Thus, the policies of the Act should be effectuated whenever possible, and federal courts should "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). Thus,

> questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability....

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985), quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "As with any other contract, the parties' intentions

control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi,* 473 U.S. at 626, 105 S.Ct. at 3353. With this strong federal policy favoring arbitration in mind, we turn to the issue at hand.

■ The gravamen of the plaintiff's complaint is that the entire Settlement Agreement was procured by fraud. In determining whether fraud in the inducement fell within the scope of the arbitration clause that provided for arbitration of any issue "believed to constitute a breach or violation" of the Settlement Agreement, the district court looked first to the scope of the clause. It said:

> Because a 'broad' clause—such as the one in *Prima Paint*—is conspicuously absent here, defendants surely cannot contend that they agreed to arbitrate a dispute which developed under the contract. The parties did not have an agreement which provided for arbitration in the event the agreement was attacked by way of fraud in the inducement. J.A. 379.

We believe that the district court has read too narrowly the arbitration clause at issue and has completely misconstrued *Prima Paint.* In *Prima Paint,* the Supreme Court drew a clear distinction between claims of "fraud in the inducement of the arbitration clause itself" and claims of "fraud in the inducement of the contract generally." 388 U.S. at 402–04, 87 S.Ct. at 1805–06. It held that the first claim (fraud in the inducement of the arbitration clause) is one for resolution by the court, and the second (fraud in the inducement of the contract generally) is for the arbitrator.[5]

---

4. For the Federal Arbitration Act to apply to a dispute between the parties, the court must make two findings: (1) there was an agreement in writing providing for arbitration; and (2) the contract evidenced a transaction involving interstate commerce. *Am. Home Assurance v. Vecco Concrete Const.,* 629 F.2d 961, 963 (4th Cir. 1980).

5. The pertinent language of *Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. at 1805–06, is as follows: "[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. *But the statutory language does not*

*permit the federal court to consider claims of fraud in the inducement of the contract generally....* We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. In so concluding, we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." (Emphasis added; footnote omitted).

*Id. See also Mar-Len of Louisiana, Inc. v. Parsons-Gilbane,* 773 F.2d 633, 636 (5th Cir.1985); *S.A. Mineracao Da Trindade-Samitri v. Utah Intern.,* 745 F.2d 190, 194, 195 (2d Cir.1984); *Life of America Ins. Co. v. Aetna Life Ins. Co.,* 744 F.2d 409, 413 (5th Cir.1984); *Sea-Land Service, Inc. v. Sea-Land of Puerto Rico, Inc.,* 636 F.Supp. 750, 753-54 (D.P.R.1986); *Hannah Furniture Co. v. Workbench, Inc.,* 561 F.Supp. 1243, 1244-45 (W.D.Pa.1983). This distinction was clearly restated and applied by the Supreme Court in *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. at 941, and is dispositive against the contention of the plaintiff.

We attach no significance to the fact that the contract between the parties was drafted by the party seeking arbitration or that the draftee failed to follow the precise arbitration language used in the form provided by the American Arbitration Association. Both parties to this agreement were represented throughout the negotiations of the contract by able and experienced counsel. Further, the officers of both parties who engaged in the contract negotiations were sophisticated business men who negotiated at arms' length. We are unwilling to disregard what we discern to be clear language in favor of a claim of overreaching by one of the parties in a case such as this. Neither do we think it proper to disregard plain and unequivocal language simply because it does not follow slavishly the language of a form.

To summarize: We hold that the parties are bound by the Settlement Agreement to arbitrate their differences herein, and the cause is remanded to the district court for the purpose of entering an appropriate order to arbitrate.

REVERSED AND REMANDED WITH INSTRUCTIONS.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent for the reasons given in the thorough opinion of Judge Ho-ward in the district court, many relevant portions of which I have copied and adopt as my own. They follow.

Defendants have moved for arbitration of plaintiff's eleven-count complaint under Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, relying on the arbitration clause contained in the Agreement reached between the parties on September 13, 1984.

Oversimplified, the anatomy of defendants' argument is as follows. They point to Count I of plaintiff's complaint which alleges that the Agreement was fraudulently induced. They also note that an allegation of fraud in the inducement of the arbitration clause of the Agreement is conspicuously absent from the complaint. Defendants then argue that the following passage from *Prima Paint Corp. v. Flood & Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), controls the disposition of the instant motion:

> [I]f the claim is fraud in the inducement of the arbitration itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Id.* at 403-04, 87 S.Ct. at 1805-06. At first glance, defendants' argument is compelling. However, before ruling on the motion, the Court believes it illuminating to set out relevant principles of law which control here.

In ruling on this motion, this Court does not write on a clean slate. Our course has been charted by *AT & T Technologies v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In that case, the Supreme Court set out four principles on the question of arbitration, three of which are apposite to this motion.[1] *Id.* at 648-50, 106 S.Ct. at 1418-19. The three relevant rules are as follows:

---

1. The one principle not necessary for disposition of this case is that a court is not to rule on the potential merits of the underlying claims. 475 U.S. 643, 106 S.Ct. 1415. Earlier this month, the Supreme Court reaffirmed it. *See United Paperworkes (sic) International Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

1) "The first principle ... is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *Steelworkers v. Warrior & Gulf,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)). 2) "The second rule ... is that the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." 475 U.S. at 649, 106 S.Ct. at 1418. 3) Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf,* 363 U.S., (sic) at 582–583, 80 S.Ct. at 1352–1353.

475 U.S. at 650, 106 S.Ct. at 1419.

With the *AT & T* dictates in mind, the Court turns to the heart of defendants' argument for compelling arbitration. ... In that portion of its brief, defendants cite nine cases which the Court will address *seriatim.*

Defendants cite *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In that case, the Supreme Court affirmed the Court of Appeals' decision to arbitrate the contractual dispute between the parties. The arbitration clause between the parties stated, in pertinent part:

> All claims, disputes and other matters in question arising out of, or relating to, this contract or the breach thereof, ... shall be decided by arbitration....

*Id.* at 5, 103 S.Ct. at 931. The Court characterized the clause as "broad." *Id.*

Defendants cite *Robert Lawrence Company v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir.1959). In that case, the court

held that fraud in the inducement of the agreement is arbitrable. The arbitration clause in that case stated, in pertinent part:

> Any complaint, controversy or question which may arise with respect to this contract that cannot be settled by the parties thereto.

*Id.* at 404, 411 and 412. The court added, "It would be hard to imagine an arbitration clause having greater scope than the one before us." *Id.* at 412.

Next, defendants cite *Coleman v. National Movie–Dine, Inc.,* 449 F.Supp. 945 (E.D.Pa.1978). In that case, the court found arbitration proper where the plaintiff alleged fraud in the inducement of the agreement. Citing *Prima Paint, supra,* the court stated: "A claim of fraud in the inducement of the contract is insufficient to prevent invocation of the arbitration provision of the contract." *Id.* at 948. That arbitration clause stated:

> Any controversy, dispute or question arising out of any aspect of the Agreement, including the making thereof, shall be resolved by arbitration.

*Id.* at 947 n. 2. The court characterized the arbitration clause as "broad." *Id.* at 945.

Defendants then cite *Austin v. A.G. Edwards & Sons, Inc.,* 349 F.Supp. 615 (M.D. Fla.1972). That court found arbitration necessary where plaintiff alleged forgery of the agreement. The arbitration clause there provided:

> Any controversy between you [the defendant] and the undersigned [the plaintiffs] arising out of this contract or the breach thereof, shall be settled by arbitration....

Defendants move on to *Todd v. Oppenheimer & Co., Inc.,* 78 F.R.D. 415 (S.D.N. Y.1978). The court rejected plaintiff's allegations of fraud or coercion, finding arbitration proper. The arbitration clause in that case stated:

> Any controversy between you and the undersigned arising out of, or relating to this agreement, or the breach thereof, or arising out of transactions with you shall be settled by arbitration.

*Id.* at 425.

Defendants also rely on *In re Oil Spill By Amoco Cadiz, etc.,* 659 F.2d 789 (7th

Cir.1981). The court required plaintiffs' claim of fraudulent inducement of the agreement to be arbitrable. The clause which compelled this result stated that "any difference arising out of this Agreement (sic) or the operations thereunder ..." were arbitrable.

Defendants cite *Merrill Lynch, Pierce, Fenner v. Hayden*, 637 F.2d 391 (5th Cir. 1981). That court commented on the plaintiff's allegations of coercion, confusion, undue influence and duress in signing the contract. *Id.* at 398 n. 11. The court stated that those claims would be proper for arbitration. The clause in that case stated, in pertinent part:

> Any controversy between us arising out of ... this Agreement shall be settled by arbitration....

*Id.* at 394 n. 1.

Finally, defendants cite *Brener v. Becker Paribas, Inc.*, 628 F.Supp. 442 (S.D.N.Y. 1985). There, plaintiff's allegations of "Customer Consents" obtained by fraud were for the arbitrator. The "Customer Consent" arbitration clause stated:

> It is agreed that any controversy between us arising out of [Becker's] business or this agreement shall be submitted to arbitration....

*Id.* at 445.

On December 11, 1987, the Court received defendants' reply to plaintiff's opposition to defendants' motion to compel arbitration. In this paper, defendants cite two cases from this Court. In *Shotto v. Laub*, 632 F.Supp. 516 (D.Md.1986), the court required plaintiffs to submit their claims to arbitration. *Id.* at 523. The "Customer Agreements" at issue in that case contained the following arbitration clause:

> SIXTEENTH: Any controversy between you and the undersigned arising out of said account or relating to this contract or breach thereof, shall be settled by arbitration....

Defendants also urge the Court to consider *Fisher v. Prudential–Bache Securities, Inc.*, 635 F.Supp. 234 (D.Md.1986). Arbitration was proper, Judge Young ruled, and he noted further that "the language of the arbitration clause was clear and all-inclusive...." *Id.* at 236. The arbitration clause stated, in pertinent part:

> 14....Any controversy arising out of or relating to ... this Agreement or or [sic] the breach thereof ... shall be settled by arbitration....

All of these cases relied upon by defendants are harmonious in that broad contractual arrangements for arbitration require arbitration when attacked with a claim of fraud in the inducement. Indeed, defendants have established this principle with clarity and force. Before turning to the instant dispute, the Court believes it instructive to again review the principles governing this dispute.

Arbitration is a creature of contract. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). And whether a certain issue is arbitrable is governed "on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962); *United Steelworkers of America v. Logan Park*, 634 F.Supp. 182, 183 (S.D.W.Va.1986). Indeed, "... the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors v. Solar Chrysler–Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). For the issue now before the Court, the key inquiry is to determine whether the Agreement, dated September 13, 1984, covers the asserted dispute. The Court turns to the arbitration clause in the Agreement. [The arbitration provisions are set out in detail in the majority opinion and are omitted here.]

Defendants have characterized this clause as a "broad" one. (Defendants' Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion to Compel Arbitration, filed on December 11, 1987 at 4). Defendants argue further that the arbitration clause applies to "any question, charge, complaint or grievance" which is alleged to constitute a violation of the

Agreement. *Id.* at 6. It is an interesting characterization and interpretation.

\* \* \* \* \* \*

"When the claim of invalidity goes to the entire contract containing the agreement to arbitrate, the court's sole responsibility is to determine whether the scope of the arbitration clause is broad enough to encompass a claim of fraud in the inducement. *See, e.g., Prima Paint,* 388 U.S. at 406, 87 S.Ct. at 1807; *Schacht* [*v. Beacon Ins. Co.*], 742 F.2d [386] at 390 [7th Cir.1984]." *Slomkowski v. Craig-Hallum, Inc.,* 644 F.Supp. 132, 134–135 (D.Minn.1986); *see also, Int'l. Longshoreman's Ass'n. v. Delta S.S. Lines,* 636 F.Supp. 722, 736 (S.D.N.Y.1986).

In discharging its responsibility, the Court believes neither party agreed to arbitrate the issue of fraud in the inducement of the Agreement. If they had so agreed, there would be language such as that found in the arbitration clause before the Court in *Prima Paint,* which provided:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration. . . .

388 U.S. at 398, 87 S.Ct. at 1803.

\* \* \* \* \* \*

I leave the text of Judge Howard's opinion at this point and note that the very broadest language which is found in the arbitration provisions is that "[a]ny question, charge, complaint or grievance *believed to constitute a breach or violation*" of the agreement shall be communicated to the other side and then be submitted to arbitration. (Italics added). That language obviously does not include fraud in the inducement either of the agreement or the arbitration clause thereof, and is a far cry from the contract provisions in *Prima Paint.*

In sum, I would affirm.